01 Civ. 3943 (TLM)(LB)

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RICARDO BRENES

Plaintiff,

-against-

JOANNE FRANK, Principal, Norman Thomas High School, Individually and in her Official Capacity; RUDOLPH F. CREW, Individually and in his former Official Capacity as Chancellor; GRANGER WARD, Individually and in his former Official Capacity as Manhattan Superintendent, THE NEW YORK CITY DEPARTMENT OF EDUCATION; THE BOARD OF EDUCATION OF THE CITY OF NEW YORK and the CITY OF NEW YORK,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-314
New York, N.Y. 10007-2601
lmartine@law.nyc.gov

*Of Counsel:* Larry R. Martinez
*Telephone:* (212) 227-3153

LawManager No. 01GL000530

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 3

ARGUMENT

        POINT

                PLAINTIFF'S CLAIMS ARE BARRED, IN
                PART, BY THE STATUTE OF LIMITATIONS. ..................................... 3

        POINT II

                PLAINTIFF CANNOT SHOW THAT A TRIABLE
                ISSUE OF FACT EXISTS CONCERNING HIS
                PROCEDURAL DUE PROCESS CLAIM. ............................................... 4

                A.  No Protected Property Interest............................................... 4

                B.  No Denial of Due Process – Plaintiff Received
                     Notice and Opportunity To Be Heard.............................. 14

                C.  No Denial of Due Process – Parratt Principle
                     and Plaintiff. ...................................................................... 18

                D.  Monell - No BOE Liability................................................ 22

                E.  No Individual Liability – Qualified Immunity. ................. 23

CONCLUSION................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Pages**

Anderson v. Creighton,
   483 U.S. 635 (1987).........................................................................................................24

Bd. of County Comm'rs v. Brown,
   520 U.S. 397, 407 (1997)..........................................................................................23

Board of Regents v. Roth,
   408 U.S. 564 (1972).........................................................................................5, 14, 15

Brenes v. City of New York,
   No. 07 Civ 5549, 2009 U.S. App. LEXIS 6270 (2d Cir. 2009)..........................................4, 19

Cafeteria Workers v. McElroy,
   367 U.S. 532 (1985).........................................................................................................15

City of Oklahoma v. Tuttle,
   471 U.S. 808 (1985)...................................................................................................22, 23

Cleveland Bd. Of Educ. V. Loudermill,
   470 U.S. 532 (1985).........................................................................................................15

Davis v. City of New York,
   228 F. Supp. 2d 327 (S.D.N.Y. 2002),
   aff'd, 75 Fed. Appx. 827 (2d Cir. 2003) ................................................................................23

Davis v. Scherer,
   468 U.S. 183 (1984).........................................................................................................25

Demoret v. Zegarelli,
   451 F.3d 140 (2nd Cir. 2006).............................................................................................25

Emma v. Schenectady City Sch. Dist.,
   28 F. Supp. 2d 711 (N.D.N.Y 1998).....................................................................................5

Felder v. Securticus Sec. Servs.,
   No. 04 Cv 9501, 2005 U.S. LEXIS 26969 (S.D.N.Y. Oct. 31, 2005) .......................................9

Fierro v. City of New York,
   2008 U.S. Dist. LEXIS 57516 (S.D.N.Y. July 30, 2008) ........................................................2

Harlow v. Fitzgerald,
   457 U.S. 800 (1982).........................................................................................................23

**<u>Cases</u>**                                                                                             **<u>Pages</u>**

<u>Hellenic v. Am. Neighborhood Action Comm. v City of New York,</u> ("HANAC"),
    101 F.3d 877 (2d Cir. 1992)...........................................................................................18, 20

<u>Hudson v. Palmer,</u>
    468 U.S. 517 (1984)...................................................................................................18, 19

<u>Jermosen v. Smith,</u>
    945 F.2d 547 (2d Cir. 1991).............................................................................................24

<u>Locurto v. Safir,</u>
    264 F.3d 154 (2d Cir. 2001).............................................................................................18

<u>Malley v. Briggs,</u>
    475 U.S. 335 (1986).........................................................................................................23

<u>Marino v. Ameruso,</u>
    837 F.2d 45 (2d Cir. 1988)...............................................................................................18

<u>Mathews v. Eldridge,</u>
    424 U.S. 319 (1976).........................................................................................................4

<u>McEvoy v. Spencer,</u>
    124 F.3d 92 (2d Cir. 1997)...............................................................................................24

<u>Monell v. New York City Dep't of Social Servs.,</u>
    436 U.S. 658 (1978).....................................................................................................22, 23

<u>Mugavin v Nyquist,</u>
    39 N.Y.2d 1003 (1976) .....................................................................................................7

<u>Naramunchi v. Bd. of Trustees of the Conn. State Univ.,</u>
    850 F.2d 70 (2d Cir. 1988)............................................................................................5, 20

<u>National Labor Relations Board v. Mackay Radio & Telegraph Co.,</u>
    304 U.S. 333 (1938).........................................................................................................15

<u>Orshan v. Anker,</u>
    489 F. Supp. 820 (E.D.N.Y. 1980) ...................................................................................6

<u>Orshan v. Anker,</u>
    550 F. Supp. 538 (E.D.N.Y. 1982) .................................................................................13

<u>Owens v. Okure,</u>
    488 U.S. 235 (1988).........................................................................................................3

**Cases**                                                                                                                                    **Pages**

Pearl v. City of Long Beach,
    296 F.3d 76 (2d Cir. 2002)................................................................................3

Perez v. City of New York,
    41 A.D.3d 378 (1st Dep't 2007) ......................................................................2

Ricca v. Board of Education.,
    42 N.Y.2d 385 (1979) ....................................................................6, 11, 12, 14

Saucier v. Katz,
    533 U.S. 194 (2001)......................................................................................24

Segal v City of New York,
    459 F.3d,207 (2d Cir. 2006)..........................................................................20

Shaffer v. Schenectady City Sch. Dist.,
    245 F.3d 41 (2d Cir. 2000).............................................................................5

Speichler v. Board of Coop. Educ. Servs.,
    90 N.Y.2d 110, (1997) ...................................................................................6

Wilkinson v. Russell,
    182 F.3d 89 (2d Cir. 1999),
    cert. denied, 528 U.S. 1155 (2000) ..............................................................24

Zinermon v. Burch,
    494 U.S. 1132 ...........................................................................................4, 18

**Statutes**

42 U.S.C. §1983.......................................................................................1, 3, 23, 25

Fed. R. Evid. 801(c).............................................................................................16

Local Civil Rule 56.1 ............................................................................................3

N.Y. Education Law §§ 2573(1).............................................................................5

N.Y. Education Law § 3012 ...............................................................................5, 14

N.Y. Education Law § 3020 ...................................................................................1

N.Y. Gen. Constr. Law § 58 ..............................................................................6-7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

RICARDO BRENES,

                                        Plaintiff,

                                                        01 Civ. 3943 (TLM) (LB)
                        -against-

JOANNE FRANK, et al.,

                                        Defendants.

------------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

Plaintiff, Ricardo Brenes, a former probationary teacher employed by the New York City Board of Education ("BOE")[1] brings this action pursuant to 42 U.S.C. §1983 ("§ 1983") alleging deprivation of procedural due process under the Fourteenth Amendment. [2] Specifically, plaintiff alleges that he achieved "tenure by estoppel" and as a tenured teacher was owed additional process prior to the termination of his BOE employment, including a hearing under New York Education Law § 3020-a.

Defendants now move for summary judgment dismissing plaintiff's procedural due process claim in its entirety. First, all claims accruing prior to June 8, 1998, three years before the filing of this suit, are barred by the applicable three-year statute of limitations.

---

[1] Formally, the Board of Education of the City School District of the City of New York. Defendants are Rudolph F. Crew, Granger Ward, Joanne Frank, the BOE, and the City of New York.

[2] Plaintiff also asserts a First Amendment retaliation claim against Norman Thomas High School Principal, Joanne Frank. However, by order, dated August 13, 2009, the Court reopened discovery and permitted summary judgment motions and cross-motions solely on the issue of plaintiff's Fourteenth Amendment, Due Process Clause claim. See Order, dated August 13, 2009, Docket Entry 134.

Second, plaintiff did not posses a property interest in continued BOE employment. For plaintiff to establish a property interest in his employment he must establish that he earned tenure, by estoppel or otherwise, before the date of his termination. Plaintiff cannot meet this burden as the facts in the record conclusively show that plaintiff was not appointed by the BOE to a probationary tenure track position until February 2, 1998, and that he was terminated February 1, 1999, a day before the three-year probationary period would have been completed. Nor can plaintiff establish that he earned "tenure by estoppel" because he was not continued in employment after the conclusion of his probationary period.

Third, assuming, <u>arguendo</u>, that plaintiff had a protected property interest in his BOE job, plaintiff cannot establish, as a matter of law, that he was denied the process due him. Specifically, process was provided plaintiff by: (1) the numerous post-observation conferences which made his teaching deficiencies clear and in which ways to improve were suggested; (2) the contractual grievance process afforded plaintiff through the Union collective bargaining agreement; (3) the termination letter he received; (4) the Chancellor's C-31 post-termination process that plaintiff abandoned; or (5) the Article 78 that plaintiff untimely filed. In view of all the processes and procedures provided to him, plaintiff cannot claim that he was the denied minimal process due under the Constitution. Accordingly, there is no genuine issue of material fact to be tried on plaintiff's due process claim and it must be dismissed.[3]

---

[3] All claims against the City of New York must be dismissed because the City is an entity separate and apart from the BOE. The City never employed plaintiff and is not alleged to have taken any action concerning plaintiff. <u>See</u>, <u>e.g.</u>, <u>Perez v. City of New York</u>, 41 A.D.3d 378, 379, (1st Dep't 2007)("[change in governance of BOE] do not abrogate the statutory scheme for bringing lawsuits arising out of torts allegedly committed by the Board and its employees, and the City cannot be held liable for those alleged torts."); <u>see also</u> <u>Fierro v. City of New York</u>, 2008 U.S. Dist. LEXIS 57516, at *33 (S.D.N.Y. July 30, 2008).

## STATEMENT OF FACTS

The Court is respectfully referred to the defendants' Statement of Undisputed Material Facts Under Local Civil Rule 56.1, dated January 15, 2010 ("56.1 Statement"), the Declaration of Larry R. Martinez, January 15, 2010, ("Martinez Declaration") and the exhibits annexed to that declaration for a statement of pertinent and material facts. All references to "Ex." are to the exhibits to the Martinez Declaration.

## ARGUMENT

### POINT I

### PLAINTIFF'S CLAIMS ARE BARRED, IN PART, BY THE STATUTE OF LIMITATIONS.

In New York, all § 1983 claims are subject to a three-year statute of limitations and that statute begins to run when a plaintiff knows or has reason to know of the injury which forms the basis of his action. See Owens v. Okure, 488 U.S. 235, 249-50 (1988); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002). In this case, plaintiff alleges constitutional violations that date back to May, 1995. See First Amend. Comp., Ex. "A." However, claims against all defendants based on events that accrued on or before June 8, 1998, three years before this action was filed, are time-barred. This includes, all § 1983 claims based on: (a) events occurring while plaintiff was employed at Martin Luther King High School ("MLKHS") from September, 1993 to June 1996; (b) plaintiff's transfer to Graphic Communication Arts High School ("GCAHS") in September, 1996; (c) plaintiff employment at GCAHS from September, 1996, to June, 1997; (d) the failure to hire plaintiff for a probationary tenure track position from June, 1997, through February, 1998; (e) the September 2, 1997, assignment to Seward Park High School ("Seward Park") as an un-appointed substitute teacher; (f) the January 20, 1998, removal from Seward Park; and (g) plaintiff's formal appointment to a probationary position at Norman

Thomas High School ("NTHS") on February 2, 1998. [4] See First Amend. Comp., Ex. "A," at "19," –"86,"; "120," – "127,"; "152,"-"168."   Therefore, all these § 1983 claims must be dismissed as time-barred.

## POINT II

### PLAINTIFF CANNOT SHOW THAT A TRIABLE ISSUE OF FACT EXISTS CONCERNING HIS PROCEDURAL DUE PROCESS CLAIM.

The Amended Complaint's Due Process Clause claim rests entirely on the proposition that plaintiff was a tenured teacher at the time of his termination. Specifically, plaintiff alleges that having achieved tenure through New York's tenure by estoppel statute, he was not provided the process due a tenured teacher.  First Amend. Comp., ¶¶ "152" -"182." Rather, plaintiff alleges that he was treated as a probationary teacher who has no rights in employment.  Id.

To prove a Due Process Clause violation, plaintiff must establish that he had a constitutionally protected property interest in continued employment and that he was deprived of that interest without the process due.  See Board of Regents v. Roth, 408 U.S. 564, (1972); see also Mathews v. Eldridge, 424 U.S. 319 (1976); Zinermon v. Burch, 494 U.S. 11, 125 (1990).

### A.     No Protected Property Interest.

---

[4] In its decision vacating the grant of summary judgment to Defendant Joanne Frank with respect to plaintiff's First Amendment retaliation claim, the Second Circuit determined that plaintiff suffered an adverse employment action on February 3, 1998, based on a notation she made on a personnel transaction form ("PTF") transferring plaintiff to NTHS.  See Brenes v. City of New York, No. 07 Civ 5549, 2009 U.S. App. LEXIS 6270, * 3 (2d Cir. 2009); see also PTF, bates stamp No. 00358, Ex. "RR."  Defendants restfully submit that no triable issue exists regarding the fact that any claim based on the February 3, 1998 notation is barred by the three-year statute of limitations.

"Property interests…are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law…that secure certain benefits and support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. at 577. It is well settled that to have a property interest in a continued employment, plaintiff must have "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 577. Thus, we turn to New York's statutory tenure scheme.

In New York, a tenured teacher has a protected property interest in his position. See N.Y. Educ. Law §§ 2573(1)(a) (probationary period); § 3020-a (hearing for tenured teachers); Shaffer v. Schenectady City Sch. Dist., 245 F.3d 41, 46 (2d Cir. 2000). A teacher does not enjoy the benefits of tenure until such tenure becomes effective. Id. Conversely, probationary teachers do not have a property interest in continued BOE employment. See Naramunchi v. Bd. of Trustees of the Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988). New York vests tenure decisions in the school board, here the BOE, and a probationary employee may be denied tenure without being granted a hearing. See Emma v. Schenectady City Sch. Dist., 28 F. Supp. 2d 711 (N.D.N.Y 1998); see also N.Y. Educ. Law § 3012.

In general, in order to earn tenure in New York, teachers must be formally appointed to a vacant probationary teaching position and serve for three years. N.Y. Educ. Law § 2573(1)(a); see McDonald, at *8.[5] However, where the teacher has "has rendered satisfactory service as a regular substitute for a period of two years. . . the probationary period [is] limited to one year." N.Y. Educ. Law § 2573(1)(a). This is known as "Jarema" credit. Subsequent to formal appointment to a probationary position, a teacher can earn tenure either by: (1) explicit

approval by the superintendant at the expiration of the probationary period or; (2) the teacher can earn "tenure by "estoppel."  Tenure by estoppel results when a school board accepts the continued services of a teacher beyond the three-year probationary period, but fails to take the action required by law to either grant or deny tenure prior to the expiration of the teacher's probationary term.  Orshan v. Anker, 489 F. Supp. 820, 824 (E.D.N.Y. 1980); see also Speichler v. Board of Coop. Educ. Servs., 90 N.Y.2d 110, (1997).

In this case, plaintiff alleges that he was appointed on or about September 2, 1997, and that he somehow earned tenure by estoppel on or about June 28, 1998.  See First Amend., Comp., Ex. "A," ¶¶ "152"- "182."  Plaintiff provides alternate theories to support his argument.  First, relying on defendants' answer to the original complaint that was filed in 2001, plaintiff suggests that he was formally appointed to a probationary position at Seward Park on September 2, 1997.  See letter motion to strike by Robert N. Felix, dated November 30, 2009, Docket Entry 140.  Second, assuming that he was not formally appointed at Seward Park, plaintiff suggests that *he should be deemed* to have been appointed to a tenure track position at the school as of September 2, 1997 based on his license qualifications.  See First Amend. Comp., Ex. "A," ¶¶ "152" – "182."  Plaintiff supports this allegation by relying heavily, if not exclusively, on Ricca v. Board of Education. 42 N.Y. 2d 395 (1979); see also id.

As an initial matter, the following facts are indisputable: plaintiff received a certificate of qualification ("CQ") from the New York State Education Department on or about on or about February 1, 1997.  See CQ, Ex. "CC."  The certificate made plaintiff eligible to receive a conditional teaching license from the BOE to teach bi-lingual social studies in BOE Junior and High Schools. See Chancellor's Regulation C-205(1), (9), Ex. "H."  In July, 1997, the

---

[5] The probationary period is measured by the calendar, rather than school year.  See N.Y. Gen.

BOE issued plaintiff conditional Junior High and High School licenses.  <u>See</u> Conditional Licenses, Ex. "FF."  The receipt of these licenses made plaintiff eligible to be placed on a list of prospective appointees to a probationary position.  <u>See</u> Chancellor's Regulations C-205, (6); C-200, (3),(14),(15), C-201(5), Ex. "H."; Campbell Dep., Ex. "D," at 10-20.  Based on his prior service, plaintiff was awarded two years of Jarema credit, which effectively reduced his probationary period to one year.  <u>See</u> Chancellor's Regulation, C-200,(3), Ex. "H,"; <u>see</u> <u>also</u> BOE Report "Pedagogues Who Are Currently On Probation – All Manhattan High Schools," Bates Stamp No. 0262, Ex. "RR."  Therefore, after an appointment to a probationary tenure track position, plaintiff was required to complete one year of probation. <u>Id.</u>

On July 23, 1997, plaintiff was called, from the list of prospective appointees, to appear at a BOE placement center for the Manhattan High School District. <u>See</u> letter from the Manhattan High School Superintendency, District 71, dated July 23, 1997,  Ex. "HH."; <u>see</u> <u>also</u> Pl. 2009 Dep., Ex. "G," at 38:7-42:20; 44-50.  Plaintiff was informed at the placement center that all referrals for appointed positions were conditioned on the existence of a vacancy and an interview by a school or district representative. <u>See</u> <u>generally</u> <u>id</u>.; Ex. "GG,"; Campbell Dep., Ex "D," at 19, 26-27.  Plaintiff testified that he understood that an appointment was conditioned on the existence of a vacancy. <u>See</u> Pl. 2009 Dep., Ex. "G," at 44-45.  Furthermore, absent the existence of a vacancy for an appointed position, a teacher possessing CPT and regular city licenses could serve as a regular substitute teacher prior to obtaining an appointment to a tenure track appointed position.  See Chancellor's Regulation, C-205, (19), Exhibit "H,"; see also id. Chancellor's Regulation, C-200, (18), (26).

---

Constr. Law § 58; <u>see</u> <u>also</u> <u>Mugavin v Nyquist</u>,  39 N.Y. 2d 1003, 1005 (1976).

Plaintiff testified further that he understood that he was not appointed to a probationary tenure track position at any point before September 2, 1997. Id. at 35:8-35:14; 45:12-45:18. No tenure track vacancy existed in the High Schools district prior to February, 1998. Thus, plaintiff was assigned to a regular substitute teaching position, as opposed to a tenure track position, at Seward Park on September 2, 1997. See (a) letter from Superintendent Ward to plaintiff, dated September 5, 1997, Bates Stamp No. 000277; (b) letter from Seward Park High School Principal Jerrold Stoopack to plaintiff, dated September 10, 1997, Bates Stamp No. 000279, both part of Ex. "LL."; see also GWHS "Procedures for Per Diem Substitutes," dated September 10, 1997, Bates Stamp Nos. 000294-000295, Exhibit "MM,"; Stoopack Dep., Ex. "PP," at 71:11-71:19;.

On or about September 7, 1997, plaintiff wrote a letter to his Union, dated September 7, 1997, summarizing a meeting he had with them and indicating that he would accept the teaching assignment at Seward Park. Specifically, plaintiff wrote:

> I am willing to wait for my appointment as a full time bilingual social studies teacher. . .**I will comply with your order to report to Seward Park High School on Monday, September 8, 1997 and take the substitute position being offered.**

See letter from plaintiff to the UFT, dated September 7, 1997, Bates Stamp No. 5050, Ex. "LL." (emphasis added). This letter admits that the position at Seward Park to which plaintiff was assigned was a substitute position and not a tenure track position.

On September 10, 1997, plaintiff signed a personnel transaction form accepting the substitute teaching position at Seward Park. See Ex. "NN." The Principal of Seward Park, Jerrold Stoopack, understood that plaintiff's position at the school would be that of a substitute teacher and not tenure track. See Stoopack Dep., Ex. "PP," at 30:1-30:21; 33:1-33:13; 58:10-

58:16.  Plaintiff worked at Seward Park from September 2, 1997, until he was excessed from the school on or about January 20, 1998.  See generally Kicinski Decl., Ex. "E," ¶ "6,"; see also, CBA Article 5, Ex. "H."

While plaintiff contends that he obtained tenure prior to February 1, 1999, defendants contend that he would obtain tenure only if he remained employed at NTHS and worked past February 2, 1999.  For plaintiff to show that he obtained tenure prior to February 1, 1999, he must show that he was appointed to a tenure track position on or before February 1, 1998.  Plaintiff has, therefore, seized on the September 2, 1997, assignment at Seward Park (which ended four months later) as the appointment which somehow gained him tenure.  See generally Ex. "A."  This contention, the lynchpin to his claim of a property interest, must be rejected.

First, the position at Seward park was a substitute position and not tenure track. Thus, it could not generate the beginning of the one year that plaintiff needed to complete the probationary period.

Second, plaintiff's reliance on defendants' original answer is misplaced.  Plaintiff commenced the instant action on June 8, 2001.  See Original Complaint dated June 5, 2001, Ex. "DDD." Defendants answered in August, 2001.  See Answer, Ex. "EEE."  However, plaintiff has amended his complaint and this completely replaced the original complaint.  Similarly, defendants answered the amended complaint and the answer to the amended complaint completely supplants the answer to the original complaint.  Thus, the alleged admission is no more. See Felder v. Securticus Sec. Servs., No. 04 Cv 9501, 2005 U.S. Dist. LEXIS 26969 (S.D.N.Y. Oct. 31, 2005).

Furthermore, although, at the time, defendants' answer incorrectly stated that plaintiff was a probationary teacher effective September 2, 1997, the answer immediately went on to assert that "his probationary period expired on February 2, 1999." Thus, plaintiff was well aware that defendants maintained that the probationary period could not end prior to February 2, 1999, and were not confused about plaintiff's position in the least. This is amply demonstrated by the mountain of discovery which parties conducted concerning the date on which a tenure track position was available and the date on which plaintiff was appointed to a tenure track position. Plaintiff's attempt to use this obvious error in the answer to the original complaint must therefore be rejected.

In addition, the overwhelming evidence produced in discovery and in the record, conclusively establishes that plaintiff was not formally appointed to a probationary tenure track position until the February 2, 1998 at Norman Thomas High School. This evidence includes: (1) The Personnel Transaction Form signed by the plaintiff on September 10, 1997 accepting a substitute position at Seward Park. See PTF, signed by the plaintiff, Ex. "NN;" see also Kicinski Decl., Ex. "E," ¶ 6; (2) Plaintiff's letter to his union conceding that he would accept the un-appointed position at Seward Park. See letter from plaintiff to the UFT, Ex. "LL,"; (3) Service History and List History Reports indicating plaintiff's formal date of appointment as February 2, 1998. See HRS List Report, Exhibit "C,"; Campbell Dep., Ex. "D," at 10-16 (explaining HRS List Report codes); (4) BOE report titled "Pedagogues Who Are Currently on Probation [in] Manhattan High Schools" indicating plaintiff's formal appointment date as February 2, 1998. See Report, Bates Stamp No. 0262, Ex. "RR,"'; (5) Personnel Transaction Form, signed by the plaintiff on January 30, 1998 indicating his formal appointment date as February 2, 1998. See PTF Bates Stamp No. 000358; Ex. "RR." Accordingly, plaintiff was not formally appointed by

the BOE on September 2, 1997 and, as such, plaintiff's reliance on defendants' 2001 answer, which has since been superseded by subsequent pleadings, must be rejected.

Third, plaintiff's argument that, assuming he was not formally appointed to a tenure track position at Seward Park, he should be deemed to have been appointed at the school based his bald allegation that the BOE intentionally delayed his appointment is patently without merit. See generally First Amend. Comp., Ex. "A," Simply put, there is no evidence whatsoever that a tenure track position was available at Seward park in September, 1997. Indeed, plaintiff's correspondence with his own union demonstrates conclusively that the Seward Park position was not a tenure track position.

Plaintiff relies heavily, if not exclusively on Ricca v. Board of Education. 42 N.Y.2d 385, 387-390 (1979). In Ricca, the petitioner worked as a full-time woodworking teacher at the same school for 12 years between 1963-1975. Petitioner subsequently received a regular teaching license to teach woodworking in July 1971. Id. Petitioner was not immediately appointed to a probationary tenure track position in September, 1971, although one was available at the school at that time. Rather, his appointment was delayed unilaterally by the school principal until February, 1972, when he was appointed to the same position that he had occupied for the previous 10 years. Id. In January, 1975, just prior to the expiration of the three years since the February,1972, formal appointment, BOE informed petitioner that, after 12 years of service at the same school in the same job, BOE was going to deny him tenure. Petitioner commenced a State court proceeding contending that he had already obtained "tenure by estoppel" by September, 1974. Id. Specifically, petitioner contended that his three-year probationary period for tenure should be deemed to have begun not when he was formally appointed as a regular probationary teacher in February, 1972, but when he first became eligible

for formal appointment in the fall of 1971 because there was a vacant tenure track position at that time. Id.  The New York Court of Appeals agreed granting tenure by estoppel and noting that:

> Our decision today turns in large part on the peculiar and undisputed operative facts presented on this appeal. Of particular import are the fact that petitioner was indeed serving as a full-time teacher of woodworking at [the same school] during the fall 1971 semester and the fact that petitioner was subsequently appointed by the board to that same position.

See id. at 391-393.

The facts in this case are readily distinguishable from those in Ricca.  First, unlike the petitioner in Ricca, plaintiff did not work at one school for a continuous period of time.  See HRS List Report, Bates Stamp No. 0155,Ex. "C."[6]; see also generally Campbell Dep., Ex. "D"; Kicinski Decl.,  Ex. "E."   Second, after plaintiff received his licenses from the BOE, he was not formally appointed at Seward Park because, unlike the petitioner in Ricca, it is undisputed that no tenure track vacancy existed at Seward Park in September, 1997.  See personnel transaction form, signed by the plaintiff on September 10, 1997, Ex. "NN;" see also Kicinski Decl., Ex. "E," ¶ 6; Stoopack Dep., Ex. "PP," at 71:11-71:19.  One cannot be appointed to a position that simply does not exist.   Indeed, Principal Stoopack testified that no such vacancy for a full-time permanent bi-lingual social studies teacher existed at his school.  See Stoopack Dep., Ex. "PP," at 71:11-71:19.  Principal Stoopack further testified that the school only had two teachers who taught part-time course loads in bi-lingual social studies, namely, Victor Acevedo and plaintiff. Id. at 50:22-51:2; see also HRS Service History Report for Victor Acevedo, Bates Stamp No. RB2695-RB2696, Exhibit "QQ."

---

[6] The HRS List Report lists all licenses, with certification dates, that plaintiff was authorized to teach under from September 8, 1992 through July 4, 1997.

Third, when plaintiff was finally appointed at NTHS on February 2, 1998, unlike the petitioner in Ricca, he was appointed to a teaching position that he did not previously occupy and at a school where he previously had not worked. See HRS List Report, Bates Stamp No. 0155, Ex. "C."[7]; see also generally Campbell Dep., Ex. "D" at 10-20 (explaining HRS report codes); Kicinski Decl., Ex. "E." Accordingly, any attempt by plaintiff to rely on Ricca must be rejected.

Equally unpersuasive is any suggestion that, based on his license status plaintiff could not have worked at Seward Park as anything "lower than a probationary appointed teacher on tenure track" in the Fall of 1997. See First Amend. Comp., Ex. "A," at "64." This argument is nothing more than an attempt to magically transform a non-tenure track position into a tenure track position. Plaintiff accepted a non-tenure track position at Seward Park only because there was no other position vacant at that school. The facts remain that there was no tenure track vacancy for an appointed position and plaintiff cannot change this fact, which he acknowledged repeatedly at the time, at his discretion. Plaintiff acknowledged this not only by signing a personnel transaction form on September 10, 1997 but also in a letter to his union. See letter from plaintiff to the UFT, dated September 7, 1997, Bates Stamp No. 5050, Ex. "LL"

It is anticipated that plaintiff will next argue that he noted in the letter to the Union that: (1) he had been told by the union that "a position existed" at the school; and (2) that plaintiff accepted the position at Seward Park with full reservation of his rights as a "appointed teacher." First, plaintiff statements regarding what he was told by the union are inadmissible hearsay and create no issues of fact regarding the existence of a vacancy at Seward Park, or elsewhere for that matter. See Fed. R. Evid. 801(c). Second, as it pertains to tenure by estoppel

_____

[7] The HRS List Report lists all licenses, with certification dates, that plaintiff was authorized to

claims, it is well settled that reliance on a union statement or assurance is "unsupportable. . . [because it has no] legal authority to secure tenure. Questions of tenure are solely within the province of the school board." Orshan v. Anker, 550 F. Supp. 538, 541 (E.D.N.Y. 1982); see also N.Y. Educ. Law § 3012. As in all estoppel cases a representation by a third party not in privity to the party against whom estoppel is sought cannot bind that party. Accordingly, plaintiff's unilateral expectation regarding his status at Seward Park is insufficient to give rise to a claim of a protected property interest. See Roth, 408 U.S. at 577.

Finally, it may be that plaintiff stakes his tenure by estoppel, and attendant due process claim, on his mistaken belief that possession of a license creates a legitimate expectation of a property interest. This ignores the fact that New York has expressly rejected any claim to tenure by estoppel that is simply based on a teachers license status. See Chancellor's Regulation, C-205, (19), Ex. "H,"; see also id. Chancellor's Regulation, C-200, (18), (26). Specifically, the Court of Appeals in Ricca made clear that:

> A school board remains free, of course, to determine whether to appoint a particular person to a particular position, **and is under no obligation to appoint a substitute teacher employed in the district to a regular position simply because that teacher subsequently is licensed as a regular teacher**. . .

Ricca, 47 N.Y.2d at 393 (emphasis added). Accordingly, no genuine issue of material fact exists regarding the fact that, at the time of his termination on February 1, 1999, plaintiff was a probationary teacher, with no property interest in continued employment. This is an end to plaintiff's claim which must be dismissed in its entirety.

**B.      No Denial of Due Process – Plaintiff Received Notice and Opportunity To Be Heard.**

---

teach under from September 8, 1992 through July 4, 1997.

Assuming, <u>arguendo</u>, that plaintiff had a protected property interest in BOE employment, as a matter of law, plaintiff cannot establish that he was deprived of that interest without due process. "Every due process inquiry must begin with the recognition that "**[due process] guarantees no particular form of procedure;** it protects substantial rights." <u>National Labor Relations Board v. Mackay Radio & Telegraph Co.</u>, 304 U.S. 333, 351, (1938)(emphasis added). To this end, the Supreme Court has cautioned litigants against confusing the procedural mechanisms for enforcing a property interest created by State Law, with the underlying substantive property interest itself. <u>See</u> <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 541 (1985). Determining what process is constitutionally required to protect those rights is necessarily a case-by-case inquiry. <u>See</u> <u>Cafeteria Workers v. McElroy</u>, 367 U.S. 886, 895, (1961). In the employment context, a tenured individual need only be provided an opportunity for "some kind of hearing" prior to his discharge, not the process he prefers or the process that may be mandated by state law as state law is free to exceed constitutional minima. <u>Loudermill</u>, 304 U.S. at 542; <u>see</u> <u>also</u> <u>Roth,</u> 408 U.S. at 569-570. In <u>Loudermill</u> the Supreme Court made clear that the essential requirements of due process for even a tenure teacher are:

> notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken…The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

407 U.S. at 546.

In this case, assuming that plaintiff had a protected property interest in BOE employment, plaintiff received all the process due to him under the Constitution. During his probationary year, which began at Norman Thomas High School on February 2, 1998, plaintiff's classes were observed by Assistant Principal Nelson Acevedo or Principal Joanne Frank on

numerous occasions. The observations were conducted pursuant to BOE teacher performance assessment procedures which required that untenured teachers be observed in the classroom at least four times to evaluate their performance. See generally Performance Assessment Procedures, Ex. "Y,"; see also Frank 2009 Dep., Ex. "Z," at 42:6-42:13; 58:7-59:24; 94:4-94:18; Frank 2006 Dep., Ex. "AA," at 41;20-42:12; 45:12-46:27; 51:19-53:24; 65:10-66:24. They made no secret of the deficiencies in his performance and warned him repeatedly that he might be terminated if his performance did not improve.

The purpose of the classroom observation is to provide support for teachers who exhibit pedagogical weaknesses and to promote pedagogical strengths. See id., BOE Handbook "Rating Pedagogical Staff Members," Bates Stamp Nos. RB2362-RB2365; High School Memorandum No. 28, "Supervisory Practices," Bates Stamp Nos. RB2424-RB2426. The formal observation process generally entailed: (a) a discussion between the teacher and his supervisor before the observation by supervisors; (b) a formal observation of the teacher's performance for one class period; (c) a post-observation conference where both parties are required to engage in a discussion regarding the teacher's performance; and (d) a post-observation report documenting the conference. See id; see also Frank 2009 Dep., Ex. "Z," at 42:6-42:13; 58:7-59:24; 94:4-94:18; Frank 2006 Dep., Ex. "AA," at 41;20-42:12; 45:12-46:27; 51:19-53:24; 65:10-66:24.

Plaintiff's classes were observed a total of seven times between February 2, 1998 and December 17, 1998 at NTHS. In each observation, plaintiff was offered suggestions for improvement which he steadfastly rejected. See generally NTHS Observation Reports, Ex. "SS." Plaintiff was notified as early as March, 1998, that failure to incorporate any of the recommendations issued could lead to the denial of the completion of his probation or an unsatisfactory rating. See e.g. Observation Report, for observation conducted on March 2, 1998;

(b) Observation Report, for observation conducted on April 27, 1998, Exh. "SS." His termination on February 1, 1999, was preceded by ample notice of his deficiencies.[8] It should also be noted that on January 15, 1999, he was informed that his probation had been discontinued and that he continued to work for another two weeks, until February 1, 1999, and he could have provided any reasons or information he wished to provide during this two-week interregnum. This provides all the opportunity to be heard that is required under the Fourteenth Amendment.

Ironically, many of the observation reports given to the plaintiff during his employment with the BOE establish that plaintiff was often critiqued for the same pedagogical shortcomings that were pointed out at NTHS. For example, a review of the observation reports issued to the plaintiff between 1996 through 1998 reveal that plaintiff was informed on various occasions at various schools that his performance was deficient in that: (1) he taught his classes without a lesson plan; and (2) he failed to incorporate English into his lessons despite the fact that all bi-lingual students were expected to take New York State Social Studies Regents examinations in English. See e.g. Observation Report, conducted on October 3, 1996 Bates Stamp Nos. 000470-000471, Ex. "X,"; Observation Report, for observation conducted on October 20, 1998, Bates Stamp No. 1109-1111, Ex. "SS,"; Principal Turetsky Observation Report, dated November 21, 1996, Bates Stamp No. 000463; Observation Report, for

---

[8] After plaintiff was denied certification of completion of his probation on January 15, 1999, the BOE sought to provide plaintiff an additional 60 days employment as a termination period required by New York Education Law. The 60-day period is offered in order to soften the impact of termination. Plaintiff rejected this and was terminated February 1, 1999. See letter from Chancellor Rudolph F. Crew to the plaintiff, dated January 15, 1999, Ex. "VV,"; see also letter from Principal Frank to plaintiff, dated February 1, 1999, Bates Stamp No. 0993; Ex. "VV,"; letter from Principal Frank to plaintiff, dated February 1, 1999, Bates Stamp No. 0992,; Reich Dep., Ex. "UU," 66:9-70:14; 126:13-127:4; Chancellor's Regulation C-31, Ex. "H.; see also Chancellor's Regulation C-200 (7), Ex. "H."

observation conducted on March 2, 1998, Ex. "SS," CBA, Article 8, "Education Reform," Exhibit "T."

After each observation at NTHS, plaintiff was given an opportunity to engage in a post observation conference to discuss suggestions. Plaintiff consistently refused to engage in any meaningful dialogue at these conferences. <u>See generally</u> Norman Thomas Observation Reports, Ex. "SS." Plaintiff's refusal to participate in post observation conferences was noted as far back as 1996 at Graphics High School. <u>See</u> Graphic Arts Observation Reports, Ex. "X." Given the aforementioned opportunities to engage in an active conversation about his employment, plaintiff cannot seriously contend that he was denied any pre-deprivation process.

**C.     No Denial of Due Process – <u>Parratt</u> Principle and Plaintiff.**

Nevertheless, assuming <u>arguendo</u>, that plaintiff was improperly denied sufficient process prior to his termination on February 1, 1999, plaintiff still cannot make a due process claim. This is because under <u>Parratt v. Taylor</u>, and its progeny, courts have consistently held that a meaningful and adequate post-deprivation remedy, such as New York Civil Practice Law and Rules ("CPLR") Article 78 proceeding, is all the process that is due under the Fourteenth Amendment for a random and unauthorized deprivation of a constitutionally protected interest by a state actor, even if intentional. <u>See</u> <u>Hellenic v. Am. Neighborhood Action Comm. v City of New York</u>, ("HANAC") 101 F.3d 877, 881-882 (2d Cir. 1992); <u>Zinermon</u>, 494 U.S. 1132, 132; <u>Hudson v. Palmer</u>, 468 U.S. 517, 531 (1984); <u>Locurto v. Safir</u>, 264 F.3d 154, 175 (2d Cir. 2001).

In this case, plaintiff readily concedes that the deprivation of his protected property interest was random and unauthorized. <u>See</u> First Amend. Comp., Ex. "A," ¶ "152" – "182." Therefore, as a matter of law, the CPLR Article 78 proceeding in State court  provide a meaningful and adequate post-deprivation remedy. <u>See</u> <u>Marino v.  Ameruso</u>, 837 F.2d 45 (2d Cir. 1988) (allegations that process constitutionally defective does not state a Due Process Clause

claim because Article 78 State court proceeding is meaningful and adequate remedy). Accordingly, there is no triable issue concerning the fact that an Article 78 proceeding would have satisfied plaintiff's due process claim.

On or about February 16, 2000, plaintiff brought a proceeding in New York State Supreme Court, County of Kings, pursuant to CPLR Article 78 challenging his termination. Plaintiff challenged the termination and asserted a tenure by estoppel claim. <u>See</u> petition in <u>Ricardo Brenes v. Board of Education of the City of New York</u>, Index Number 6244/2000, verified on February 16, 2000, Ex. "AAA. On or about March 24, 2000, BOE cross-moved to dismiss the petition on the grounds that, *inter alia,* the petition was barred by the applicable four-month statute of limitation because the petition was brought more than a year after the accrual of the cause of action. <u>See</u> (a) Notice of Cross Motion to Dismiss, Affirmation of Respondents' Cross-Motion to Dismiss the Petition, dated March 24, 2000; and (b) Memorandum of Law In Support of Respondent's Cross-Motion To Dismiss, dated March 24, 2000, as Ex. "BBB." On or about November 17, 2000, the Honorable William J. Garry, Justice of the Supreme Court, County of Kings, issued an Order and Judgment dismissing the petition in its entirety. <u>See</u> Order, dated November 17, 2000, Ex. "CCC." Accordingly, plaintiff received all the process that he was due when he filed and lost his Article 78 petition.

It need only be noted that, the Second Circuit's refusal to grant claim preclusion effect to the Article 78 decision in plaintiff's case does not deprive the availability of this proceeding of its effect under <u>Parratt</u>. <u>See</u> <u>Brenes v. City of New York</u>, No. 07 Civ 5549, 2009 U.S. App. LEXIS 6270, at * 7 (2d Cir. 2009). This is because the Supreme Court has held that the <u>availability</u> of the meaningful post-deprivation remedy suffices for due process purposes even if plaintiff chooses not take advantage of that process. <u>See</u> <u>Hudson,</u> 468 U.S. at 531.

Accordingly, plaintiff cannot, 8 years later, resuscitate his due process claim in federal court simply because through his own delay, his previous Article 78 proceeding was time-barred. See HANAC 101 F.3d at 881-882 (Plaintiff was not denied a meaningful opportunity to challenge his termination and was not deprived of due process simply because he failed to timely avail himself of the opportunity.).

Aside from the process afforded through a CPLR Article 78 proceeding, plaintiff received two other forms of process that gave him a meaningful and adequate opportunity to be heard. Specifically, plaintiff was afforded post-deprivation process through: (1) the contractual grievance and arbitration process provided in the parties collective bargaining; and (2) the Chancellor's Regulation C-31 process ("C-31 Process"). See CBA, Article 22, Exhibit "T,"; Chancellor's Regulation C-31, Exhibit "H,"; see also "Appeal Process" Handbook, Exhibit "H," at RB2412-2415; BOE By-Law, Article 5, Exhibit "H." It is well settled that these procedures satisfy the requirements of procedural due process. See Naramunchi, 850 F.2d at 72 (2d Cir. 1988)(Grievance procedures contained in collective bargaining agreement provide all the process that is due as a matter of federal law.); see also Segal v City of New York, 459 F.3d,207, 214 (2d Cir. 2006)(The C-31 regulation provides all the process that is due by providing a litigant an opportunity to present evidence, call witnesses, cross-examine witnesses, and make an oral presentation through union-selected counsel.).

With respect to the contractual grievance process, on or about February 26, 1999, plaintiff filed a Step I grievance where he was given an opportunity to challenge his termination before Principal Frank. On or about March 24, 1999, plaintiff filed a Step II decision where he was given the opportunity to challenge his termination before the Superintendant's grievance committee. On or about June 29, 1999, plaintiff filed a Step III grievance where he was given

the opportunity to challenge his termination before the Chancellor's committee. Plaintiff's grievance was denied at every step. <u>See</u> Step I Grievance Decision, dated February 26, 1999, Bates Stamp Nos. 0958; Step II Grievance Decision, dated March 24, 1999, Bates Stamp Nos. 00618-00619; Step III Grievance Decision, dated June 29, 1999, Ex. "XX." Tellingly, the union not only acknowledged plaintiff's probationary status but also refused to take plaintiff's grievance to arbitration. <u>See</u> letter from the Union's Howard J. Bloch to BOE, dated October 4, 1999, Exhibit "ZZ."

Alternatively, with respect to the Chancellor's Regulation C-31 process, this process provides that probationary employees, like plaintiff, who are terminated or who have received an unsatisfactory rating, are entitled to a review of both the discontinuance and the unsatisfactory rating before a tri-partite committee pursuant to BOE By-Law 5.3.4.[9] <u>See</u> Chancellor's Regulation C-31, Ex. "H,"; <u>see</u> <u>also</u> "Appeal Process" Handbook, Ex. "H," at RB2412-2415; BOE By-Law, Article 5, Ex. "H." In pertinent part, C-31 provides that at the review the probationary employee is entitled to: (a) be represented by an advocate; (b) present all relevant evidence; (c) call witnesses in his/her behalf; (d) cross-examine witnesses; and (d) make an oral presentation. <u>See</u> Chancellor's Regulation, C-31, Ex. "H."

In this case, the C-31 Process review of plaintiff's unsatisfactory rating and denial of completion of probation was scheduled for May 12, 1999. One day before the C-31 hearing, which is held at BOE's Office of Appeals and Review ("OAR"), plaintiff requested an adjournment through his UFT representative based on an alleged illness. Plaintiff was informed that he must provide a doctor's note by May 12, 1999, to verify this illness. When he failed to provide a letter in a timely manner, the C-31 committee deemed the hearing abandoned and

---

[9] By-law 5.3.4 was renumbered as By-law 4.3.2.

closed the case.  <u>See</u> "Notice to Appellant," dated March 16, 1999, Bates Stamp No. 0297; (b)

Letter from UFT representative, Dan Acosta, dated May 11, 1999, Bates Stamp No. 0298; (c)

Chancellor's Committee Decision, dated May 12, 1999, Bates Stamp No. 302; (d) Letter from

Dr. Clarence Chen, dated May 14, 1999; and (e) Letter from Robert Reich, dated May 17, 1999,

Ex. "YY."

Accordingly, whether through: (1) the numerous pre- and post-observation

conferences during the 1998-99 school year; (2) the contractual grievance process that plaintiff

invoked in 1999; (2) the C-31 process that plaintiff abandoned in May, 1999 or (3) the CPLR

Article 78 in State court that plaintiff untimely filed in February, 2000,  plaintiff cannot seriously

contend that he was denied an opportunity to "present his side of the story."  That plaintiff now

comes before this Court with new theories regarding his status at the BOE and now claims a lack

of opportunity to present his side of the story concerning his performance is, simply ludicrous.

Plaintiff was provided with ample process, far in excess of the constitutional minima, both before

and after the termination on February 1, 1999.  This is an end to plaintiff's claim, which should

be dismissed in its entirety.

**D.      <u>Monell</u> - No BOE Liability.**

It is well settled that to hold a municipal entity liable under § 1983 for the

unconstitutional acts of its employees, a plaintiff must plead and prove that his constitutional

rights were violated as a result of an official policy, custom, or practice of the municipal

defendant.  <u>See</u> <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658, 690-95 (1978).

Proof of a single incident of unconstitutional activity is insufficient to demonstrate the existence

of a policy.  <u>City of Oklahoma  v. Tuttle</u>, 471 U.S. 808, 821 (1985).

Plaintiff does not point to any officially promulgated policy of denying tenured

teachers process.  Thus, plaintiff cannot show a policy of denying tenured teachers the process

due to them. The single failure alleged in this case is insufficient to state a <u>Monell</u> policy or practice. <u>See</u> <u>Tuttle</u>, 471 U.S. at 821 (single incident insufficient to establish a policy).

Turning to the vague possibility that plaintiff will argue that there is some sort of BOE a custom under <u>Monell</u>, this argument must be rejected. In <u>Davis</u>, Judge Scheindlin examined the different situations in which a plaintiff could establish a "custom" or "policy" for <u>Monell</u> purposes. <u>See</u> <u>Davis v. City of New York</u>, 228 F. Supp. 2d 327, 336-37 (S.D.N.Y. 2002), <u>aff'd</u>, 75 Fed. Appx. 827 (2d Cir. 2003). Regarding a municipal "custom," the Court found that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." <u>Id</u>. at 337 (quoting <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 407 (1997)).

In this case plaintiff, cannot establish that the acts of which he complains were carried out pursuant to a policy custom or practice of the BOE "that is so widespread as to have the force of law." <u>Id.</u> That is because the complaint in this case is composed solely of allegations concerning plaintiff's specific case and is devoid of any facts that could establish that anyone other than plaintiff was allegedly wronged. <u>See</u> <u>generally</u> First Amend. Comp., Ex. "A." As such, plaintiff's § 1983 claim against the BOE must fail.

**E.     No Individual Liability – Qualified Immunity.**

Qualified immunity protects government officials from civil suit when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The protections of qualified immunity are exceedingly broad. As the Supreme Court has put it qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)

The threshold question in resolving an issue of qualified immunity, is "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  If, and only if, the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case." <u>Id.</u>  Even if the right were clearly established, a defendant could still be afforded qualified immunity if it was objectively reasonable for him to believe that his conduct did not violate the law.  <u>Wilkinson v. Russell</u>, 182 F.3d 89, 103 (2d Cir. 1999), <u>cert.</u> <u>denied</u>, 528 U.S. 1155 (2000).

In order to determine whether the defendants are entitled to qualified immunity, the Court must examine whether the alleged constitutional right was "clearly established."   "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right . . .**The unlawfulness must be apparent**." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987) (emphasis added).  A court should consider three factors in determining whether a right was clearly established at the time a defendant acted: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.  <u>McEvoy v. Spencer</u>, 124 F.3d 92, 97 (2d Cir. 1997), <u>citing</u> <u>Jermosen v. Smith</u>, 945 F.2d 547, 550 (2d Cir. 1991).   Where reasonably competent officials could disagree as to whether the conduct at issue would violate clearly established rights, the immunity defense is available.  <u>Malley</u>, 475 U.S. at 341.

As set forth in Points II (A), II (B), II(C) and II(D) above, defendants did not violate plaintiff's due process rights.  The Court, therefore, does not need to proceed any further

as the individual defendants, Crew, Ward and Frank are thus entitled to qualified immunity as a matter of law. <u>Demoret v. Zegarelli</u>, 451 F.3d 140, 148 (2nd Cir. 2006).

Moreover, even if this Court were to find that plaintiff had a property interest in his employment and that he was not provided adequate process, such a finding cannot be considered "clearly established" given the law discussed in points II (A), II (B), II (C) and II (D) above. Where there is a mistake of fact but the mistake is reasonable, the individual official will not be liable under § 1983. This is true even though the official violates state law. In <u>Davis. v. Scherer</u>, the Supreme Court applied qualified immunity to a § 1983 suit alleging that a police chief violated the Due Process Clause by terminating a former employee without pre-termination process. 468 U.S. 183, 193-94 (1984). The Court noted that the police chief had violated state law but went on to hold that

> Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.

<u>Id.</u> (footnote omitted). Accordingly, the individual defendants would remain entitled to qualified immunity even if this Court were to find a violation of plaintiff's constitutional rights. Accordingly, for the reasons set forth above, plaintiff simply cannot prove a deprivation of any federally protected right and therefore cannot impute any § 1983 liability to any of the individually-named defendants. As such, plaintiff's claims against all the individually named defendants in this case must be dismissed in their entirety.

## CONCLUSION

**WHEREFORE**, defendants respectfully request that their summary judgment motion be granted in all respects, that the First Amended Complaint be dismissed in its entirety, that the relief requested by plaintiff be denied in all respects, that judgment be entered for defendants, and that defendants be granted costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated:      New York, New York
              January 15, 2010

                                      **MICHAEL A. CARDOZO**
                                      Corporation Counsel of the
                                        City of New York
                                      Attorney for Defendants
                                      100 Church Street, Room 2-314
                                      New York, New York 10007-2601
                                      (212) 227-3153

                    By:     ECF          /s/
                                        Larry R. Martinez
                                        Assistant Corporation Counsel

**ALAN M. SCHLESINGER**
**LARRY R. MARTINEZ**
      *Of Counsel*