UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RICARDO BRENES

Plaintiff,

-against-

JOANNE FRANK, Principal, Norman Thomas High
School, Individually and in her Official Capacity;
RUDOLPH F. CREW, Individually and in his former
Official Capacity as Chancellor; GRANGER WARD,
Individually and in his former Official Capacity as
Manhattan Superintendent, THE NEW YORK CITY
DEPARTMENT OF EDUCATION; THE BOARD OF
EDUCATION OF THE CITY OF NEW YORK and
the CITY OF NEW YORK,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-314
New York, N.Y. 10007-2601
lmartine@law.nyc.gov

*Of Counsel:* Larry R. Martinez
*Telephone:* (212) 227-3153

LawManager No. 01GL000530

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT

       POINT I

              PLAINTIFF'S CLAIMS ARE BARRED, IN
              PART, BY THE APPLICABLE STATUTE OF
              LIMITATIONS ............................................................................................. 4

       POINT II

              PLAINTIFF HAS FAILED TO SHOW THAT NO
              TRIABLE ISSUE OF FACT EXISTS
              CONCERNING HIS PROCEDURAL DUE
              PROCESS CLAIM. ...................................................................................... 5

              A.  No Protected Property Interest ........................................................... 5

              B.  No Denial of Due Process ................................................................. 11

              C.  Parratt Applies To This Case ............................................................ 14

              D.  Monell & Qualified Immunity- No BOE and
                   Individual Liability .......................................................................... 16

CONCLUSION .......................................................................................................................... 18

# TABLE OF AUTHORITIES

**<u>Casesv</u>**                                                                                                     **<u>Pages</u>**


Anderson v. Creighton,
 483 U.S. 635 (1987)..................................................................................................17

Beckwith v. Erie County Water Auth.,
 413 F. Supp. 2d 214 (W.D.N.Y. 2006) ...................................................................13

Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,
 757 F.2d 523 (2d Cir. 1985)...................................................................................6

Blatch ex rel. Clay v. Hernandez,
 360 F. Supp. 2d 595 (S.D.N.Y. 2005)...................................................................13

Board of Regents v. Roth,
 408 U.S. 564 (1972)...............................................................................................5

Brenes v. City of New York,
 No. 07 Civ 5549, 2009 U.S. App. LEXIS 6270, (2d Cir. 2009).........................4, 16

Brunecz v City of Dunkirk Bd. of Educ.,
 23 A.D. 3d 1126, 1128 (4th Dep't 2005)...............................................................13

Cartagena v. City of New York,
 257 F. Supp. 2d 708 (S.D.N.Y. 2003)...................................................................13

Castro v. Board of Education,
 777 F. Supp. 1113 (S.D.N.Y. 1990).....................................................................13

Cleveland Bd of Education v. Loudermill,
 470 U.S. 532 (1985)...............................................................................................5

Emma v. Schenectady City School Dist.,
 28 F. Supp. 2d 711 (N.D.N.Y 1998),
 aff'd 199 F3d 1322 (2d Cir.1999)...........................................................................13

Fierro v. City of New York,
 2008 U.S. Dist. LEXIS 57516 (S.D.N.Y. July 30, 2008) .......................................3

Finley v. Giacobbe,
 79 F.3d 1285 (2d Cir. 1996)...................................................................................5

Gibbs v. Cigna Corp.,

**Cases**                                                                    **Pages**

440 F.3d 571 (2d Cir. 2006)....................................................................6

Hellenic v. Am. Neighborhood Action Comm. v City of New York,
101 F.3d 877 (2d Cir. 1992)...............................................................15

Hortonville Jt Sch. Dist. v. Hortonville Ed. Ass'n,
426 U.S. 482 (1976)...........................................................................14

Hudson v. Palmer,
468 U.S. 517 (1984)...........................................................................15

Hunter v. Bryant,
502 U.S. 224 (1991)...........................................................................17

Kunglig Jarnvagsstryrelsen v. Dexter & Carpenter, Inc.,
32 F.2d 195 (2d Cir. 1929)...................................................................7

Locurto v. Safir,
264 F.3d 154 (2d Cir. 2001)...............................................................15

Marino v. Ameruso,
837 F.2d 45 (2d Cir. 1988)...........................................................10, 15

Mathews v. Eldridge,
424 U.S. 319 (1976).............................................................................5

Mull v. Ford Motor Co.,
368 F.2d 713 (2d Cir. 1996)..................................................................6

Parratt v. Taylor ...................................................................................16
451 U.S. 527 (1986)

Perez v. City of New York,
41 A.D.3d 378, 379, (1st Dep't 2007) ...................................................3

Ricca v. Board of Education
47 N.Y.2d 395 (1979) ..............................................................2, 6, 9, 10

Tucker v. Board of Educ.,
82 N.Y.2d 274 (1993) .........................................................................11

United States v. McKeon,
738 F.2d 26 (2d. Cir. 1984)...................................................................7

**Cases**                                                                      **Pages**

Western World Ins. Co. v. Stack Oil, Inc.,
    922 F.2d 118 (2d Cir. 1990)...................................................................................6, 7

Withrow v. Larkin,
    421 U.S. 35 (1975)...................................................................................14

Zinermon v. Roth,
    494 U.S. 1132 ...................................................................................15

**Statutes**

42 U.S.C. §1983.................................................................................1, 4, 5, 17

N.Y. Educ. Law § 2573 ...................................................................................11

N.Y. Educ. Law § 2573 (1)(a) .......................................................................11, 13

CPLR, Article 78 ...................................................................3, 10, 12, 13, 15, 16

Local Civil Rule 56.1.................................................................................3

New York Education Law § 3020-a .......................................................................1, 11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

RICARDO BRENES,

                                      Plaintiff,

                                                      01 Civ. 3943 (TLM) (LB)

                      -against-

JOANNE FRANK, et al.,

                                 Defendants.

-------------------------------------------------------------------- x

## **PRELIMINARY STATEMENT**

         Plaintiff, a former probationary teacher employed by the New York City Board of Education ("BOE"),[1] brings this action pursuant to 42 U.S.C. §1983 ("§ 1983") alleging deprivation of procedural due process under the Fourteenth Amendment. Specifically, plaintiff alleges that he achieved "tenure by estoppel" and, as a tenured teacher, he was owed additional process prior to the February 1, 1999 termination of his BOE employment, including a hearing under New York Education Law § 3020-a ("3020-a hearing").

         Plaintiff has moved for partial summary judgment on his due process claim. Plaintiff alleges that there is no genuine issue of material fact regarding his claim that he was a tenured, not probationary, teacher entitled to a trial-type hearing prior to termination. Plaintiff stakes his tenure by estoppel claim on two alternative theories, both of which rely on moving his appointment date from February 2, 1998, to sometime in September, 1997. First, plaintiff asserts that, based on an alleged admission made in defendants' answer to the original complaint, plaintiff was formally appointed to a probationary, tenure-track, teaching position at Seward Park

High School ("Seward Park") on September 2, 1997, and achieved tenure one-year later, on or about, September 2, 1998. Second, relying on Ricca v. Board of Education, plaintiff alleges that assuming he was not formally appointed on September 2, 1997, he should be deemed to have been appointed on September 10, 1997, the date he accepted a regular substitute (non-tenured track), position at Seward Park.

Defendants now submit their opposition to plaintiff's motion for summary judgment. On January 15, 2010, defendants moved for summary judgment in this matter and have addressed many, if not all, of plaintiff's arguments in their memorandum of law in support of their motion, dated January 15, 2010, Docket Entry 154, ("Def. Memo."). As amply discussed therein, no genuine issue exists regarding the fact that plaintiff did not achieve tenure, by estoppel or otherwise, prior to his February 1, 1999 termination. Plaintiff did not have tenure, had no constitutionally cognizable property interest in the teaching position, and, thus, no Due Process Clause claim.

First, for plaintiff to establish a property interest in his employment he must establish that he earned tenure, by estoppel or otherwise, before his termination. Plaintiff was appointed to a probationary, tenure-track, position on February 2, 1998, and he was terminated February 1, 1999, before the end of the one-year probationary period. Thus, plaintiff's case revolves around attempting to shift the date of his appointment to a tenure track position.

Second, assuming, *arguendo*, that plaintiff had a protected property interest in his BOE job, plaintiff was provided all the process constitutionally due. Specifically, process was provided plaintiff by: (1) the numerous post-observation conferences which made his teaching

---

[1] Formally, the Board of Education of the City School District of the City of New York. Defendants are Rudolph F. Crew, Granger Ward, Joanne Frank, the BOE, and the City of New York.

deficiencies clear and in which ways to improve were suggested; (2) the contractual grievance process afforded plaintiff through the Union collective bargaining agreement; (3) the termination letter he received; (4) the Chancellor's C-31 post-termination process that plaintiff abandoned; and (5) the Article 78 that plaintiff untimely filed. In view of all the processes and procedures provided to him, plaintiff cannot seriously contend that he was the denied the minimal process due under the Constitution. Accordingly, plaintiff's motion must be denied in its entirety.[2]

## **STATEMENT OF FACTS**

The Court is respectfully referred to the defendants' Counter-Statement Pursuant to Local Civil Rule 56.1, dated February 19, 2010, ("Def. Counter 56.1"), defendants' Statement of Undisputed Material Facts Pursuant Local Civil Rule 56.1, dated January 15, 2010 ("Def. 56.1 Statement"), the Declaration of Larry R. Martinez, dated February 19, 2010, ("Martinez 2/19/10 Decl.") the Declaration of Larry R. Martinez, dated January 15, 2010, ("Martinez 1/15/10 Decl.") and the exhibits annexed to those declarations for a statement of pertinent and material facts. Unless otherwise noted, all references to "Ex." are to the exhibits to the Martinez 1/15/10 Declaration.

---

[2] As discussed in their memorandum in chief, all claims against the City of New York must be dismissed because the City is an entity separate and apart from the BOE. The City never employed plaintiff and is not alleged to have taken any action concerning plaintiff. See, e.g., Perez v. City of New York, 41 A.D.3d 378, 379, (1st Dep't 2007)("[change in governance of BOE] do not abrogate the statutory scheme for bringing lawsuits arising out of torts allegedly committed by the Board and its employees, and the City cannot be held liable for those alleged torts."); see also Fierro v. City of New York, 2008 U.S. Dist. LEXIS 57516, at *33 (S.D.N.Y. July 30, 2008).

**ARGUMENT**

**POINT I**

**PLAINTIFF'S CLAIMS ARE BARRED, IN PART, BY THE APPLICABLE STATUTE OF LIMITATIONS.**

As discussed in Point I of defendants' memorandum in chief, § 1983 has a three-year statute of limitations and, thus, all claims based on events that accrued on or before June 8, 1998, three years before this action was filed, are time-barred  See Def. Memo., at 3- 4.  This includes, all § 1983 claims based on: (a) claims accruing from plaintiff's employment at Martin Luther King High School ("MLKHS") through June, 1996; (b) plaintiff's transfer to Graphic Communication Arts High School ("GCAHS") in September, 1996; (c) plaintiff's employment at GCAHS from September, 1996, to June, 1997; (d) failure to hire plaintiff for a probationary tenure track position from June, 1997, through February, 1998; (e) the September 2, 1997, assignment to Seward Park High School ("Seward Park") as a substitute (non-tenure track) teacher; (f) the January 20, 1998, removal from Seward Park; and (g) plaintiff's formal appointment to a probationary teaching position at Norman Thomas High School ("NTHS") on February 2, 1998. [3]  See Def. Memo., Docket Entry 154, at 3- 4; see also First Amend. Comp., Ex. "A," at "19," –"86,"; "120," – "127,"; "152,"-"168,"; Plaintiff's Memorandum of Law in Support of His Motion for Summary Judgment, dated January 15, 2010, Docket Entry, 156, (Pl. Memo.").  There is nothing in plaintiff's papers that might hint of any reason that these claims

---

[3] In its decision vacating the grant of summary judgment to Defendant Joanne Frank with respect to plaintiff's First Amendment retaliation claim, the Second Circuit determined that plaintiff suffered an adverse employment action on February 3, 1998, based on a notation she made on a personnel transaction form ("PTF") transferring plaintiff to NTHS.  See Brenes v. City of New York, No. 07 Civ 5549, 2009 U.S. App. LEXIS 6270, * 3 (2d Cir. 2009); see also PTF, bates stamp No. 00358, Ex. "RR."  Defendants restfully submit that no triable issue exists regarding the fact that any claim based on the February 3, 1998 notation is barred by the three-year statute of limitations.

might emerge beyond the time bar and, therefore, all these § 1983 claims must be dismissed as time-barred.

## POINT II

**PLAINTIFF HAS FAILED TO SHOW THAT NO TRIABLE ISSUE OF FACT EXISTS CONCERNING HIS PROCEDURAL DUE PROCESS CLAIM.**

### A.    No Protected Property Interest.

To prove a Due Process Clause violation, plaintiff must establish that he had a constitutionally protected property interest in continued employment and of which he was deprived and that the deprivation occurred without the minimal process constitutionally due.  See Board of Regents v. Roth, 408 U.S. 564, (1972); see also Cleveland Bd of Education v. Loudermill, 470 U.S. 532 (1985); Mathews v. Eldridge, 424 U.S. 319 (1976).  A probationary employee has no property interest in employment and no constitutional right to process.  Finley v. Giacobbe, 79 F.3d 1285 (2d Cir. 1996).

In this case, plaintiff's motion rests entirely on his assertion of tenure by estoppel which, in turn, relies on his shifting his appointment date to September, 1997. [4]  To support his claim plaintiff relies on two alternative theories. First, mistakenly relying on defendants' answer to the original complaint, which incorrectly stated that plaintiff was employed as a probationary teacher on September 2, 1997, plaintiff alleges that he was, in fact, appointed to a probationary, tenure- track position at Seward Park on that date.  See Pl. Memo., at 18-19; see also First Amend. Comp., Ex. "A," ¶¶ "152" – "182."  Second, assuming defendants are not bound by their admission, plaintiff suggests that he should nevertheless be deemed to have been appointed at

[4] For purposes of this motion, defendants do not dispute that plaintiff earned two years of "Jarema Credit" towards the mandatory three-year probationary period.  Thus, plaintiff had but one year of probationary time to serve.

some point in September, 1997.  Relying exclusively on <u>Ricca v. Board of Education</u>, plaintiff alleges that, because "he was assigned…to teach bilingual social studies with a full-time schedule" albeit as a substitute teacher, this period should somehow be credited to his one-year probationary period. 47 N.Y. 2d 395 (1979).  <u>See</u> Pl. Memo., at 20-22.  Plaintiff's claims are unsupported by admissible evidence and cannot give rise to a genuine issue of fact, much less to a grant of summary judgment for plaintiff.

Plaintiff alleges that defendants are "judicially bound" by the "admission" made in their original answer, and as such, "there is and can no longer be any legitimate dispute, in this litigation, as to whether Brenes received an appointed position at SPHS in September 1997." <u>See</u> Pl. Memo., at 19 – 20; <u>see</u> <u>also</u> Pl. 56.1 Stat., ¶ "75,"; Def. Counter 56.1, ¶ "75."  Defendants have already disagreed.  <u>See</u> Def. Memo., at 4 -9.  We now respond to plaintiff's factual and legal assertions.

Plaintiff provides this Court with a host of Second Circuit decisions which uniformly hold that admissions made by a party in *un-amended* and *un-modified* pleadings are conclusive admissions bind that party throughout the course of the litigation.  <u>See</u>, <u>e.g.</u>, <u>Gibbs v. Cigna Corp.</u>, 440 F.3d 571 (2d Cir. 2006); <u>Mull v. Ford Motor Co.</u>, 368 F.2d 713 (2d Cir. 1996); <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118 (2d Cir. 1990); <u>Bellefonte Re Ins. Co. v. Argonaut Ins. Co.</u>, 757 F.2d 523 (2d Cir. 1985).  In every case cited by the plaintiff, the Court deemed the admissions binding solely because the parties had failed to amend or modify their pleadings prior to the motion or trial phase of the case.  <u>See</u> <u>Gibbs</u>, 440 F.3d at 578, n. 10 <u>Bellafonte</u>, 757 F.2d at 528 (admission in un-amended complaint bound plaintiff); <u>Mull</u>, 368 F.2d at 716 (stipulation in pre-trial order binding as "[n]o request was made…to modify th[e]

stipulation at trial."); Western World, 922 F.2d at 122. This of course is not the case here and plaintiffs precedents are both irrelevant and inapposite.

Defendants here have filed an amended answer that completely superseded and withdrew all claims made in the answer to the original complaint. Compare, Answer, dated August 29, 2001, Ex. "EEE," with Amended Answer to the First Amended Complaint, dated November 16, 2009, Ex. "B," and Answer to Amended Complaint, dated June 19, 2009, Martinez 2/19/10 Decl., Ex. "D." It is well settled that "where a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive admission," that binds the party. See United States v. McKeon, 738 F.2d 26, 31 (2d. Cir. 1984); see also Kunglig Jarnvagsstryrelsen v. Dexter & Carpenter, Inc., 32 F.2d 195, 198 (2d Cir. 1929). Not only has the answer to the original complaint been superseded by the answer to plaintiff's amended complaint but the original answer has also been superseded by the amended answer to the amended complaint. Neither of these documents contained the erroneous admission of the original answer and either of these would serve to free defendants from that erroneous admission. This is an end to plaintiff's spurious argument concerning the long defunct original answer.

Defendants have provided a mountain of evidence establishing that plaintiff accepted a regular substitute teaching position, which is non-tenured track, at Seward Park on September 10, 1997. [5] The mountain of evidence includes plaintiff's own letter to his union

---

[5] This evidence includes: (1) The Personnel Transaction Form signed by the plaintiff on September 10, 1997 accepting a substitute position at Seward Park. See PTF, signed by the plaintiff; (2) Plaintiff's letter to his union conceding that he would accept the un-appointed position at Seward Park; (3) Service History and List History Reports indicating plaintiff's formal date of appointment as February 2, 1998; (4) BOE report titled "Pedagogues Who Are Currently on Probation [in] Manhattan High Schools" indicating plaintiff's formal appointment

complaining that the position at Seward Park was a non-tenure track teaching position.  See Letter from plaintiff to the UFT, dated September 7, 1997, Bates Stamp No. 5050, Martinez 1/15/10,  Ex. "LL."  To this mountain, plaintiff has added additional weight in his most recent brief – in which he concedes that he was "was assigned [at Seward Park] as a CPT to teach bilingual social studies with a full time schedule."  Pl. Memo., at 21.  Plaintiff has not proffered any admissible evidence, that there was a tenure track position at Seward Park in September, 1997, or that plaintiff was appointed to that imaginary position.  Plaintiff must prove both to establish a property interest in employment.  Even plaintiff does not believe that he was appointed to a probationary teaching position prior to February 2, 1998, the first date on which there was such a position at NTHS.  Consequently, plaintiff was a probationary teacher at NTHS on February 1, 1999, when he was terminated, he had no property interest in employment and there has been no violation of the Due Process Clause.

        Plaintiff's second argument is that, even if he was not appointed to a tenure track position on September 2, 1997, he should nevertheless be *deemed* to have been so appointed on that date, relying on Ricca.  See Pl. Memo., at 22 – 23.  In Point II (A) of defendants' memorandum in chief, defendants demonstrated that plaintiff's reliance on Ricca is misplaced.  See Def. Memo., at 11 – 14.  Critically, plaintiff cannot show that there was a tenure track position at Seward park in September, 1997.  See Pl. 56.1 Stat., ¶¶ "72," – "75,"; see also Def. Counter 56.1, ¶¶ "72," – "75."  The Court of Appeals in Ricca, held that a principal cannot manipulate the date of appointment to lengthen the three-year probationary period.  In that case, there was a probationary period open in woodworking in September but the principal appointed Ricca to a full time substitute position teaching woodworking instead.  Ricca's job duties

---

date as February 2, 1998; (5) Personnel Transaction Form, signed by the plaintiff on January 30,

remained the same, teaching wood working, and the tenure track position at the same school remained vacant until the principal decided to fill it with Ricca. The Ricca Court held that Ricca obtained tenure because the date of his appointment to a tenure track position should have been September and not the later date that resulted solely from the intentional delay of the school's principal. However, the Court carefully limited its decision

> [this decision relies] in large part on the peculiar and undisputed operative facts . . . that petitioner was indeed serving as a full-time teacher of woodworking at McKee during the fall 1971 semester *and* the fact that petitioner was subsequently appointed by the board to that same position.

See Ricca, 47 N.Y.2d at 393.

Here the "peculiar and undisputed operative facts" are quite different. In this case, plaintiff was at Seward Park in September, 1997, and stayed there through January, 1998, when he was "excessed." It is undisputed that plaintiff's first day of work at NTHS was the next month, in February, 1998. Unlike Ricca, here there was a change of schools and also a change of principals between September, 1997, and February, 1998. Also unlike Ricca, there was no tenure track position vacant in September, 1997, at Seward Park and, also in sharp contrast to Ricca, the Seward Park principal did not deliberately delay appointing plaintiff. Finally, it is undisputed that plaintiff was teaching a variety of courses and not just bilingual social studies while at Seward Park. In Ricca, the teacher taught woodworking before and after the appointment and did so on a full time basis. Thus, Ricca is entirely inapposite here. See Stoopack Dep., Ex. "PP," at 50:22-51:2; see also HRS Service History Report for Victor Acevedo, Bates Stamp No. RB2695-RB2696, Exhibit "QQ."

---

1998 indicating his formal appointment date as February 2, 1998.

Lastly, but not least, even assuming <u>arguendo</u>, that plaintiff did work as a full-time bilingual social studies teacher at Seward Park during the fall 1997 semester, plaintiff's claims nevertheless fail because, unlike the <u>Ricca</u> petitioner, no tenure track vacancy existed at Seward Park in September, 1997, and plaintiff does not contend as much. <u>See</u> personnel transaction form, signed by the plaintiff on September 10, 1997, Ex. "NN;" <u>see also</u> Kicinski Decl., Ex. "E," ¶ 6; Stoopack Dep., Ex. "PP," at 50:22-51:2; 71:11-71:19. A teacher cannot be appointed to a position that simply does not exist. Principal Stoopack, the principal of Seward Park in September, 1997, testified that no vacancy for a full-time permanent bilingual social studies teacher existed at his school in September, 1997. <u>See</u> Stoopack Dep., Ex. "PP," at 71:11-71:19. Principal Stoopack could not have appointed him as a probationary teacher in September, 1997, even if he had wanted to do so. This too makes <u>Ricca</u> entirely inapplicable.[6]

Ultimately, there is no dispute that there was no bilingual permanent teaching position vacant at either Seward Park or NTHS in September, 1997. This indisputable fact renders plaintiff's core argument, that he was appointed to a probationary teaching position prior to February 2, 1998, impossible. There is no evidence for such a contention and wishing will not remedy that simple fact. Plaintiff was not appointed to a probationary position until February 2, 1998, did not earn tenure, by estoppel or otherwise, at any point before he was terminated on February 1, 1999. This is an end to plaintiff's Due Process Clause claim and defendants must be granted summary judgment dismissing that claim.

---

[6] It need only be noted that <u>Ricca v. Board of Education</u> was commenced in the Supreme Court of the State of New York through a CPLR Article 78 proceeding. For the reasons set discussed in Point II, (C), below, this fact is fatal to plaintiff's due process claim, as it is well settled that a CPLR Article 78 proceeding in State court provides a meaningful and adequate post-deprivation remedy. <u>See</u> <u>Marino v. Ameruso</u>, 837 F.2d 45 (2d Cir. 1988) (allegations that process was constitutionally defective does not state a Due Process Clause claim because Article 78 State court proceeding is meaningful and adequate remedy).

**B.      No Denial of Due Process.**

        Plaintiff alleges that, having achieved tenure, he was "denied the appropriate level of process" as required section 3020-a of the New York Education Law ("3020-a hearing").  <u>See</u> Pl. Memo., ¶ "24," – "25."  Alternatively, plaintiff argues that the BOE failed to follow their own internal procedures in effectuating his termination in that: (1) he was denied the 60 day notice requirement set forth in Education Law § 2573; (2) he was inappropriately terminated by Principal Frank because she did not have the authority to terminate him; and (3) the internal C-31 process, applicable to probationary terminations, was "tainted" by the director of the BOE Office of Appeals and Reviews ("OAR") Robert Reich. <u>Id.</u>  We deal with each claim <u>seriatim</u>.

        First, for the reasons discussed in Point II, (A) above, plaintiff was terminated during his probationary period and was, therefore, not entitled to a 3020-a hearing.  Second, contrary to plaintiff's bald allegations, on February 1, 1999, Principal Frank terminated his employment with the authority of Superintendent Ward's office and plaintiff did not claim differently at the numerous grievance hearings held after his termination.  <u>See</u> Copies of the following: (1) Step I Grievance Decision, dated February 26, 1999, Bates Stamp Nos. 0958; (2) Step II Grievance Decision, dated March 24, 1999, Bates Stamp Nos. 00618-00619; (3) Step III Grievance Decision, dated June 29, 1999, all Ex. "XX."

        Third, regarding the 60-day notice requirement, New York Education Law § 2573 (1)(a), provides for a 60-day notice but it is well settled that where 60 days notice is not provided prior to the denial of probation, the sole remedy is payment of one day's pay for each day the notice was late. <u>See</u> <u>Tucker v. Board of Educ.</u>, 82 N.Y.2d 274, 278 (1993).  The 60-days is a kind of severance work and pay and does not provide a means of gaining further time on the job credited toward completion of probation.  <u>Emma v Schenectady City School Dist.</u>, 28 F Supp 2d 711, 720 (N.D.N.Y 1998), <u>affd</u> 199 F3d 1322 (2d. Cir. 1999)(The failure of a superintendent to

provide . . . notice of his [or her] intention not to recommend tenure within the timeframe set forth in section 3012 (2) confers no right of tenure" upon petitioner"); Brunecz v City of Dunkirk Bd. of Educ., 23 A.D. 3d 1126, 1128 (4th Dep't 2005)(failure to give notice in sufficient time under Education Law is not bad faith requiring reversal of the probationary termination).

          In this case, after plaintiff was denied certification of completion of his probation on January 15, 1999, the BOE sought to provide plaintiff an additional 60 days of severance work and pay. See Step I Grievance Decision, dated February 1, 1999, Step II Grievance Decision, dated March 24, 1999, Step III Grievance Decision, dated June 29, 1999, Ex. "XX." However, plaintiff refused the assignment that he was to required complete during the 60-day period and was terminated February 1, 1999. See letter from Chancellor Rudolph F. Crew to the plaintiff, dated January 15, 1999, Ex. "VV,"; see also letter from Principal Frank to plaintiff, dated February 1, 1999, Bates Stamp No. 0993; Ex. "VV,"; letter from Principal Frank to plaintiff, dated February 1, 1999, Bates Stamp No. 0992,; Reich Dep., Ex. "UU," 66:9-70:14; 126:13-127:4; Chancellor's Regulation C-31, Ex. "H.; see also Chancellor's Regulation C-200 (7), Ex. "H." Plaintiff thereafter invoked the grievance procedures set forth in the parties collective bargaining agreement and his grievance was denied at every step. See Ex. "XX." In denying plaintiff's grievance, the Chancellor's committee held that:

> It is the opinion of the undersigned that in refusing the assignment offered by the administration, the grievant forfeited any claim for additional compensation. If he thought the assignment [was] inappropriate he should have accepted it and then grieved it.

See Step III Decision, dated June 29, 1999, Bates Stamp No. 00610, Ex. "XX." Notably, plaintiff's union, the United Federation of Teachers, refused to take to arbitration plaintiff's

grievance concerning (1) the denial of the 60 days notice and (2) his termination from the BOE employment. <u>See</u> Letter from Howard Bloch, dated October 4, 1999, Ex. "ZZ."

Moreover, plaintiff never filed an Article 78 proceeding in state court challenging the grievance determinations. Much like his due process claim, this failure is fatal to any challenge in this Court regarding the 60 days notice provision which is nothing more than a red-herring. <u>See</u> <u>Blatch ex rel. Clay v. Hernandez</u>, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) (Article 78 claims brought in federal court "must be dismissed for lack of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims.") <u>see also</u> <u>Beckwith v. Erie County Water Auth.</u>, 413 F. Supp. 2d 214, 226 (W.D.N.Y. 2006); <u>Cartagena v. City of New York</u>, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003).

Most importantly, as it relates to this issue before this Court, the denial of the 60-days notice does not implicate any due process concerns because the notice provision is applicable only to probationary employees, who, by definition do not have a property interest in employment. <u>See</u> N.Y. Educ. Law § 2573 (1)(a); Def. Memo., at 5 – 6; <u>see also</u> <u>Castro v. Board of Education</u>, 777 F. Supp. 1113, 1117 (S.D.N.Y. 1990). Accordingly, plaintiff's attempt to inject any issues related to the 60 days notice provision in this case must be dismissed in its entirety.

Finally, plaintiff's argument that the internal review procedures provided by Chancellor's Regulation C-31 ("C-31 Process") were "tainted" is laughable at best. Plaintiff alleges that to the extent OAR director Robert Reich was shown a series of letters that he alleges were "highly derogatory and defamatory," the entire process was somehow compromised. <u>See</u> Pl. Memo., at 25; Pl. 56.1 Stat., ¶¶ "181,"- "187,"; <u>see also</u> Def. Counter 56.1, ¶¶ "181," – "187." Plaintiff's allegations are entirely without merit because: (1) he has failed to submit any

admissible evidence that establishes that the letters in question were given to Robert Reich; and (2) that these letters somehow compromised the C-31 process, especially because no hearing ever took place.

At the outset, an administrative hearing officer is presumed to be neutral and plaintiff must provide real evidence of a lack of neutrality to show bias. <u>Withrow v. Larkin</u>, 421 U.S. 35 (1975). Familiarity gained by dealing with the case cannot serve to establish bias. "Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not, however, disqualify a decision maker." <u>Hortonville Jt Sch. Dist. v. Hortonville Ed. Ass'n</u>, 426 U.S. 482, 493 (1976)(<u>citing</u> <u>Withrow v. Larkin</u>, 421 U.S. 35, 47 (1975)).

As discussed in Point II (B) and II (C), of defendants memorandum in chief, the C-31 Process provides that probationary employees, like plaintiff, who are terminated or who have received an unsatisfactory rating, are entitled to a review of both the termination and the unsatisfactory ratings before a tri-partite committee, which did not include OAR Director Robert Reich, pursuant to BOE By-Law 5.3.4.[7] <u>See</u> Def. Memo., at 15 – 22. Plaintiff had the opportunity to appeal his termination, and air out the laundry list of complaints set forth in this case, at the C-31 hearing. <u>Id.</u> However, one day before the hearing, plaintiff abandoned his complaint by failing to timely seek an adjournment of the hearing. <u>Id.</u> Accordingly, plaintiff's claim that the hearing was somehow "tainted" is entirety incomprehensible and must be dismissed.

C.     <u>**Parratt**</u> **Applies To This Case**

Nevertheless, and as it relates to plaintiff's due process claim, assuming <u>arguendo</u> that the hearing was compromised, this fact simply does not establish that he was denied any

---

[7] By-law 5.3.4 was renumbered as By-law 4.3.2.

process.  This is because under <u>Parratt v. Taylor</u>, courts have consistently held that a meaningful and adequate post-deprivation remedy, such as CPLR Article 78 proceeding, is all the process that is due under the Fourteenth Amendment for a random and unauthorized deprivation of a constitutionally protected interest by a state actor, even if intentional.  <u>See</u> <u>Parratt v. Taylor</u>, 451 U.S. 527, 541, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), overruled on other grounds by <u>Daniels v. Williams</u>, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986); <u>see</u> <u>also</u> <u>Hellenic v. Am. Neighborhood Action Comm. v City of New York</u>, ("<u>HANAC</u>") 101 F.3d 877, 881-882 (2d Cir. 1992); <u>Zinermon v Roth</u>, 494 U.S. 1132, 132; <u>Hudson v. Palmer</u>, 468 U.S. 517, 531 (1984); <u>Locurto v. Safir</u>, 264 F.3d 154, 175 (2d Cir. 2001).

As discussed in Point II, (C), of their memorandum in chief, plaintiff readily concedes that the deprivation of his protected property interest was random and unauthorized. <u>See</u> Def. Memo., at 18 – 22.  Therefore, as a matter of law, the CPLR Article 78 proceeding in State court provides a meaningful and adequate post-deprivation remedy.  <u>See</u> <u>Marino v. Ameruso</u>, 837 F.2d 45 (2d Cir. 1988) (allegations that process constitutionally defective does not state a Due Process Clause claim because Article 78 State court proceeding is meaningful and adequate remedy).  This is all the constitution requires and the Due Process Clause claim must be dismissed.

Here, the  BOE as state cannot know when it will incorrectly determine that a teacher is still serving a probationary period and terminate that teacher as a probationer rather than as a tenured teacher.  As a practical matter, the state is unable to provide a pre-deprivation process because it cannot predict when an error will be made and a tenured teacher will be terminated as if the teacher was still a probationary teacher.  The BOE here is in precisely the same situation as the government in <u>Parratt</u>, <u>Hudson</u>, or <u>HANAC</u>, and just as in those case post-

deprivation process is constitutionally sufficient. In such circumstances, where prediction of the deprivation is impossible for the State, the Parratt doctrine applies and post-deprivation process provides all the process constitutionally due.

Indeed, plaintiff proved the viability and desirability of such post-deprivation process by bringing an, *albeit* untimely, Article 78 proceeding in New York State Supreme Court, County of Kings, challenging his termination and his rating. See Def. Memo., at 18 – 22. Without the support of his union, plaintiff challenged the termination and asserted a tenure by estoppel claim, the very same claim as he asserts here. Id. at 19.[8] That proceeding was dismissed, *inter alia,* as time-barred because it was brought more than four months after the termination. See Order and Judgment of the Honorable William J. Garry, Justice of the Supreme Court, County of Kings, dated November 17, 2000, Ex. "CCC,"; see also Article 78 petition filed by the plaintiff in Ricardo Brenes v. Board of Education of the City of New York, Index Number 6244/2000, N.Y. Supreme Court, Kings County, verified on February 16, 2000, Ex. "AAA."; Copies of the following: (1) Notice of Cross Motion to Dismiss, Affirmation of Respondents' Cross-Motion to Dismiss the Petition, dated March 24, 2000; and (2) Memorandum of Law In Support of Respondent's Cross-Motion To Dismiss, dated March 24, 2000, all Ex. "BBB."

Accordingly, plaintiff received all the process that he was due when he filed and lost his Article 78 petition. This is an end to plaintiff's due process claim and his motion must be denied in its entirety.

**D.      Monell  & Qualified Immunity- No BOE and Individual Liability.**

---

[8] On October 4, 1999, plaintiff was informed by his union that it would not pursue plaintiff's appeal of his probationary termination. Indicating that, notwithstanding his claims to the contrary, the union never informed plaintiff that he was an appointed probationary teacher at Seward Park. See Letter from Howard Bloch, dated October 4, 1999, Ex. "ZZ."

As amply discussed in Point II, (D), and II, (E), of defendants memorandum in chief, no triable issue exists regarding the fact that all claims against the BOE and all individually named defendants must be dismissed. First, all claims against the BOE must be dismissed based on plaintiff's failure to establish a municipal policy, practice or custom of denying tenured teachers the process due to them. Accordingly, all claims against the BOE must be dismissed in their entirety. <u>See</u> Def. Memo., at 23 – 25.

Similarly, all claims against all individually-named defendants must be dismissed because plaintiff has failed to prove a deprivation of any federally protected right and therefore cannot impute any § 1983 liability to any of the individually-named defendants. In particular, at the absolute least, the issue of whether plaintiff had tenure by estoppel was in doubt and therefore the process constitutionally required equally doubtful. It was, therefore, objectively reasonable for the individual defendants to believe that their actions were entirely consistent with the Constitution. <u>Hunter v. Bryant</u>, 502 U.S. 224, 228-29 (1991)(reasonable but mistaken belief of fact protected by qualified immunity); <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987). As such, plaintiff's claims against all the individually named defendants in this case must be dismissed in their entirety.

## CONCLUSION

**WHEREFORE**, defendants respectfully request that plaintiff's partial motion for summary judgment be denied in its entirety, that defendants' summary judgment motion be granted in all respects, that the First Amended Complaint be dismissed in its entirety, that the relief requested by plaintiff be denied in all respects, that judgment be entered for defendants, and that defendants be granted costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated:      New York, New York
             February 19, 2010

                                  **MICHAEL A. CARDOZO**
                                  Corporation Counsel of the
                                    City of New York
                                  Attorney for Defendants
                                  100 Church Street, Room 2-314
                                  New York, New York 10007-2601
                                  (212) 227-3153

By:   **ECF**     /s/
                       Larry R. Martinez
                       Assistant Corporation Counsel

**ALAN M. SCHLESINGER**
**LARRY R. MARTINEZ**
      *Of Counsel*